MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions

Decision:      2014 ME 124
Docket:        Was-14-67
Submitted
 On Briefs:  September 23, 2014
Decided:      November 4, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## STATE OF MAINE

v.

## STEPHEN TREADWAY

JABAR, J.

[¶1] Stephen Treadway appeals from a judgment of conviction of assault (Class C), 17-A M.R.S. § 207(1)(A) (2013), and domestic violence assault (Class C), 17-A M.R.S. 207-A(1)(B)(1) (2013), entered in the trial court (*R. Murray, J.*) after a jury trial. Treadway contends that, although there was sufficient evidence to support the guilty verdicts for the assault charges, the State did not produce evidence sufficient to overcome the "parental-control" justification, and his conviction should therefore be vacated. *See* 17-A M.R.S. § 106(1) (2013). Because there was sufficient evidence presented at trial for the jury to rationally conclude that the parental-control justification was disproved beyond a reasonable doubt, we affirm Treadway's conviction.

## I. FACTS

[¶2] "Viewed in the light most favorable to the State, the following evidence was admitted at trial." *State v. Cook*, 2010 ME 81, ¶ 2, 2 A.3d 313. Stephen Treadway's son, the victim here, lived with his mother, Krystal Murphy, and Treadway had not lived with them for a few years. On September 18, 2013, the victim, then fourteen years old, called Murphy and asked her to come home because he did not want to be alone with Treadway, who was coming there to continue an argument he and the victim had been having regarding the victim's marijuana use. Murphy arrived at her home to find the victim sitting on the porch, and Treadway arrived shortly thereafter.

[¶3] Treadway and the victim engaged in a brief conversation in which Treadway indicated his displeasure with the victim's marijuana use and the victim indicated that he would continue using marijuana. Murphy sat in her vehicle with the radio on in an effort to give Treadway privacy while speaking with his son. Treadway then began to walk away, and Murphy rolled down her window to speak with him about an unrelated matter. Murphy asked the victim, who was still seated on the porch, to go inside the house. He refused to do so.

[¶4] Treadway then approached the victim, telling him to go inside and to listen to his mother. The victim said "no," and remained seated on the porch. At that point, Treadway got behind the victim, grabbed him under both arms, and

began dragging him toward the door. The victim resisted, so Treadway straddled the victim with a knee on his torso, pinning his back against the porch floor. Treadway then repeatedly struck the victim on the head with an open hand. The victim raised his hands in defense, eventually grabbing the necklace Treadway was wearing. Treadway told the victim to let go of the necklace and, when the victim refused to do so, punched him in the head multiple times with a closed fist. Treadway then stood up and kicked the victim in the ribcage while he remained lying on the porch floor.

[¶5] An argument ensued between Treadway and Murphy, and the victim went inside the house for a brief period. Then, standing in the house's entryway, the victim said to Treadway, "hey Dad, why don't you stick around, the police are on their way." At that point, Treadway walked toward the victim, pinned him against the mudroom wall, and proceeded to punch him in the face and head with closed fists.

[¶6] After the altercation, the victim had a red mark on his torso that faded the following day and visible bruising on both of his temples that faded "after a day or two." The victim did not go to school the day after the altercation in order to avoid having to explain the bruises. The victim testified at trial that his head hurt for a couple days after the altercation, though he did not report any pain to the responding officers.

4

[¶7]  Treadway was charged with one count of assault (Class C), 17-A M.R.S. § 207(1)(A), and one count of domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(B)(1).[1]  Following a January 2014 jury trial, Treadway was found guilty on both counts[2] and sentenced to three years' imprisonment. Treadway timely appealed.

## II.  DISCUSSION

[¶8]  Treadway argues that the State did not produce sufficient evidence to disprove the "parental discipline" defense beyond a reasonable doubt.  *See* 17-A M.R.S. § 106(1).  Generally, when reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the State to determine whether the jury could rationally find beyond a reasonable doubt every element of the offense charged.  *State v. Haag*, 2012 ME 94, ¶ 17, 48 A.3d 207.  In determining whether the facts presented were sufficient to raise the parental-discipline justification, we review the evidence in the light most favorable to the parent, and if the facts put the justification in issue the State must then disprove its applicability beyond a reasonable doubt.  17-A M.R.S. § 101(1)

---

[1]  Both charges were enhanced to Class C offenses due to prior convictions.  *See* 17-A M.R.S. § 1252(4-A) (2013).

[2]  Prior to trial, the parties stipulated that the jury would address only the assault charge, and that a verdict of guilty on the single charge would result in judgments of conviction on both counts.

(2013); *State v. York*, 2001 ME 30, ¶¶ 9, 12, 766 A.2d 570.  Once the jury has found the parent guilty of assault, however, thus rejecting the justification, we review the facts relating to the defense in the light most favorable to the State. *York*, 2001 ME 30, ¶ 16, 766 A.2d 570.

[¶9]  Pursuant to Maine's parental-discipline justification, parents may use a "reasonable degree of force" in disciplining their children.  17-A M.R.S. § 106(1).  Thus, the use of force that may otherwise constitute an assault may be justified if a parent reasonably believes that such force is necessary to prevent or punish his or her child's misconduct.  *Id.*; *York*, 2001 ME 30, ¶ 13, 766 A.2d 570.  In order for 17-A M.R.S. § 106(1) to provide a justification, "both the force used and the parent's belief in its necessity must be reasonable" as measured by an objective standard.  *See* 17-A M.R.S. § 106(1-A) (2013); *York*, 2001 ME 30, ¶ 14, 766 A.2d 570.  The reasonableness of the parent's belief as to the necessity of force is measured by whether that belief grossly deviated from what a reasonable, prudent person would believe necessary under similar circumstances.  *York*, 2001 ME 30, ¶ 14, 766 A.2d 570.  Because the force must be "employed for the purpose of preventing or punishing the child's misconduct[,]" the parent must maintain a reasonable degree of control over the physical consequences resulting therefrom. *Id.* ¶ 18.  The application of force may be found reasonable where it resulted in

6

"transient discomfort or minor temporary marks." 17-A M.R.S. § 106(1-A); *York,* 2001 ME 30, ¶ 14, 766 A.2d 570.

[¶10] Treadway's use of force here may have stemmed from the victim's refusal to comply with either his parents' instructions to "go inside" or Treadway's instruction to let go of his necklace, or perhaps more remotely, from the victim's insistence on using marijuana despite his father's wishes. *See State v. Wilder,* 2000 ME 32 ¶ 24, 748 A.2d 444 (finding "talking too much which can 'annoy people sometimes'" sufficient to raise the parental-control justification); *York,* 2001 ME 30, ¶ 11, 766 A.2d 570 (finding the justification applicable where the victim continued making a noise after being instructed not to do so). Thus, the evidence in the record is sufficient to give rise to the parental-discipline justification, and the trial court properly instructed the jury regarding the defense.[3]

[¶11] In order to convict Treadway, the State, in addition to proving the elements of assault,[4] must have presented sufficient evidence to allow the jury to determine beyond a reasonable doubt that "the degree of physical force that [Treadway] used caused physical injury greater than transient pain and/or minor temporary marks, or [that Treadway]'s belief that the force used was necessary to

---

[3] Treadway does not take issue with the jury instructions, including the court's explanation of the parental-discipline justification.

[4] Treadway does not challenge the sufficiency of the evidence regarding the elements of assault.

control [his son]'s misconduct was grossly deviant from what a reasonable and prudent parent would believe necessary in the same situation." *York*, 2001 ME 30, ¶ 15, 766 A.2d 570.

[¶12] The evidence presented by the State was sufficient to support a finding that the victim sustained more than transient discomfort or minor temporary marks. *See id.* ¶ 17. The victim had bruising on his head that lasted "a day or two," and he missed school the following day in order to avoid having to explain the bruises. *See id.* The jury could have also accepted the victim's testimony that his head hurt for "a couple days" following the altercation.

[¶13] Likewise, there was sufficient evidence for the jury to conclude that any belief that Treadway may have held that slapping, punching, and kicking his son was necessary to prevent or punish any misconduct "constituted a gross deviation from what a reasonable and prudent parent would have deemed necessary in the same situation." *Id.* ¶ 19. Relying on reasonable inferences as well as their own common sense and life experience, the jury could have determined that Treadway's actions did not represent "a method of correction or a reasonable means to obtaining the child's attention and compliance, but rather represent[ed] an adult who ha[d] lost control of his own responses." *Id.* ¶ 19. Furthermore, in punching his son in the head and kicking him in the torso, Treadway did not "maintain reasonable control over the outcome or physical

consequences" of his use of force such that it may be considered to have been "designed to prevent or punish misbehavior." *Id.* ¶ 18 (finding no such reasonable control when the parent threw his child onto a bed); *cf. Wilder*, 2000 ME 32, ¶¶ 47-49, 748 A.2d 444 (holding that a parent's grabbing his child's shoulder and mouth is not, as a matter of law, an unreasonable approach to control the child).

[¶14]  In short, there was sufficient evidence for the jury to conclude that Treadway's actions exceeded the bounds of parental discipline and became criminal in nature.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Jeffrey W. Davidson, Esq., Machias, for appellant Stephen Treadway

Carletta Bassano, District Attorney, and Ethan Plaut, Asst. Dist. Atty., Prosecutorial District VII, Ellsworth, for appellee State of Maine

Washington County Superior Court docket number CR-2013-152
For Clerk Reference Only